**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| DEBRA A. MELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **CAUSE NO. 1:04-CV-1071-SEB-VSS** |
| ) | |
| JO ANNE B. BARNHART, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**E N T R Y**

The plaintiff, Debra A. Melton, seeks judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Act. The Court's review is limited: we determine only whether the Commissioner's factual findings are supported by substantial evidence in the record and whether any material errors of law have occurred. 42 U.S.C. § 405(g); *Skarbeck v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "Substantial evidence" under the Act is less than a preponderance: it is only that quantity and quality of evidence that is sufficient for a reasonable person to conclude that it supports the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004); *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). This deferential standard of review is applied because Congress has designated the Commissioner, not the courts, to make disability decisions under the Act:

In reviewing the decision of the ALJ, we cannot engage in our own analysis of

1

>whether [the claimant] is severely impaired as defined by the SSA regulations.
>Nor may we reweigh evidence, resolve conflicts in the record, decide questions of
>credibility, or, in general, substitute our own judgment for that of the
>Commissioner.  Our task is limited to determining whether the [Commissioner's]
>factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  Unlike the Court's limited review of the Commissioner's factual findings, it reviews the legal bases for her decisions *de novo*.

Disability is statutorily defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(3)(A).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  The combined functional effect of all of a claimant's impairments shall be considered throughout the disability-determination process.  42 U.S.C. §§ 423(d)(2)(B) and 1382a(a)(3)(G).

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  20 C.F.R. §§ 404.1520 and 416.924.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id.*  At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled.  Second, if the claimant's

impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and  416.924(c).  Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled.  The Listing of Impairments are medical conditions that the Administration has pre-determined are disabling based on specified signs, symptoms, and functional effects.  20 C.F.R. § 404.1525.  If the claimant's impairments do not satisfy a Listing at step three, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is a claimant's remaining ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations.  20 C.F.R. §§ 404.1545 and 416.945.  At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

The burden rests on the claimant to establish steps one through four.  The  burden then shifts to the Commissioner at step five to establish that there are jobs that the claimant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If a claimant has only exertional limitations, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables correlating age, work experience, education, and RFC with predetermined disabled or not-disabled findings.  20 C.F.R. §§ 404.1569 and 1569a.  If a

claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then use of the grids is prohibited and a vocational expert must testify regarding the numbers of jobs in the economy for a person with the claimant's vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grid result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

Applications for disability benefits are given initial and, if requested, reconsideration review by administration medical and vocational experts. If the claimant is dissatisfied with these decisions, he may request a hearing before an administrative law judge (ALJ).[1] A claimant who is dissatisfied with the ALJ's decision may request the Social Security Administration's Appeals Council to review the decision. If the Appeals Council either declines to review or affirms the ALJ's decision, the claimant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review an ALJ's decision, the ALJ's decision becomes the final decision of the Commissioner that is judicially reviewed.

Ms. Melton applied for disability insurance benefits on July 17, 2001. Her application was denied on initial and reconsideration review and a hearing before an ALJ was held on November 14, 2002. The ALJ issued his decision denying her application on November 26, 2002 and the Appeals Council denied Ms. Melton request for review on June 11, 2004. She

---

[1] Initial and reconsideration reviews in Indiana are performed by an agency of the state government — the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration — under arrangement with the Social Security Administration. 20 C.F.R. Part 404, Subpart Q. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

timely filed this civil action on June 24, 2004.  She has been represented throughout the administrative and judicial process by counsel.

At the time of the hearing, Ms. Melton was 41 years old; she has a high-school education; and her past relevant work included employment as a security guard, cook, and gas-station attendant.

At step one of the five-step sequential evaluation process, the ALJ found that Ms. Melton was not engaged in substantial gainful activity.  At step two, he found that she suffered from the following severe impairments:  hepatitis C, cirrhosis, degenerative disc disease, visual acuity loss, chronic obstructive pulmonary disease, and chronic alcoholism.  At step three, the ALJ found that none of these impairments, singly or in combination, met or equaled, any conditions listed in the Listing of Impairments.  For his steps four and five analysis, the ALJ determined that Ms. Melton has the RFC to perform sedentary work (sitting for six hours of an eight-hour work day, standing and walking for two hours in an eight-hour day, and lifting and carrying a maximum of seven pounds) with the added restrictions that the job must not require fine visual acuity; exposure to noxious fumes, odors, respiratory irritants, or extremes of hot or cold; and the job should not involve food service.  Based on the testimony of a vocation expert at the administrative hearing, the ALJ found at step four that the assigned RFC precluded all of Ms. Melton's past relevant work.  At step five, using the grids as a guideline, he determined that she was not disabled.

Ms. Melton briefly asserts only two procedural errors in the ALJ's decision:  he failed to adequately explain his rejection of Ms. Melton's treating physician's medical opinions and he

failed to adequately evaluate Ms. Melton's credibility. While brief, Ms. Melton's arguments are entirely correct. ALJs have a duty to minimally articulate their evaluation of the evidence and, in particular, the credibility of a claimant's reports of subjective symptoms, such as pain. *Godsey v. Apfel*, 238 F.3d 803, 809 (7th Cir. 2000) (ALJ must build a logical bridge from the evidence to his conclusion); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). An ALJ need not discuss every piece of evidence, but he must provide enough articulation of his evaluation that a reviewing court may trace the path of his reasoning. *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Without this minimal articulation of an ALJ's evaluation of the evidence and his reasoning for a disability conclusion, a reviewing court has nothing to review; we cannot be certain that he considered and evaluated the relevant evidence or that he applied the correct disability standards. The law provides that it is the ALJ who evaluates a claimant's eligibility for disability and it is the ALJ who must explain his reasoning. A reviewing court may not review whether the government's attorneys are able to correctly articulate a rationale for the ALJ's decision in a civil action and a reviewing court itself will not search the record to find adequate grounds for the ALJ's decision.

Stephen D. Pletcher, M.D., one of Ms. Melton's regular treating physicians, a gastro-enterologist, completed a functional-capacity questionnaire on February 12, 2002, (R. 188, 228), in which he described Ms. Melton's ability to work:

> She can occasionally and frequently lift and carry a maximum of less than 10 pounds, frequently less than.
>
> The maximum she can stand and walk, with normal breaks, in an eight-hour work day is less than 2 hours.
>
> She can sit, with normal breaks, a maximum of less than 2 hours in an eight-hour work

>day.
>
>The longest she can sit before needing to change positions is 10 minutes.
>
>She can stand only 10 minutes before changing positions.
>
>She must walk around every 10 minutes for a period of at least 10 minutes.
>
>She must have the opportunity to shift at will from sitting or standing/walking.
>
>She can only occasionally twist and crouch. She can never stoop (bend), climb stairs, or claim ladders.
>
>Reaching (including overhead), handling (gross manipulation), fingering (fine manipulation), feeling, and pushing/pulling are all affected by her impairments.
>
>Her impairments and/or treatments would cause her to be absent from work more than three times a month.

(R. 188-190). The medical reasons Dr. Pletcher gave for his limitations were "muscle weakness, tremor, recurrent unexpected diarrhea, vomiting & fatigue limits ability to work." (R. 189).

The ALJ rejected Dr. Pletcher's medical opinions when he found that Ms. Melton retained the functional capacity to sit for six hours (not less than two); stand and walk for two hours (not less than two); found no requirements for shifting positions, walking for 10 minutes every 10 minutes, or monthly absences for three days; and found no restrictions on stooping, twisting, crouching, reaching, handling, fingering, feeling, or pushing/pulling.

The ALJ's discussion of Dr. Pletcher's treating medical opinion was as follows:

>Dr. Pletcher reported the claimant would be limited to lifting and carrying less than ten pounds. He reported she could stand and walk for two hours in an eight-hour day and sit for two hours in an eight-hour day due to muscle weakness. Dr. John Winikates performed a neurological evaluation on July 16, 2002. He reported the claimant's muscle mass was diffusely decreased but there was no focal atrophy and no fasciculations visible. She had diffuse symmetric weakness. her coordination was only mildly impaired bilaterally, worse in the lower

> extremities. Her heel tapping was impaired but her finger tapping appeared fairly unremarkable. She also had only mild sustension tremor noted in her hands. I do not find evidence from Dr. Winikate [*sic*] inconsistent with the residual functional capacity assessed. The evidence indicates the claimant has peripheral neuropathy. However, the evidence in its entirely [*sic*] does not indicate the claimant is precluded form performed work activities at the level assessed. Therefore, I do not give Dr. Pletcher's assessment of the claimant controlling weight.

(R. 17). The ALJ not only incorrectly described Dr. Pletcher's limitations (Dr. Pletcher limited Ms. Melton to *less than* two hours standing and walking and *less than* two hours sitting) he also omitted significant other limitations (*e.g.*, the need to change positions and walk every ten minutes for a period of ten minutes). The ALJ also mis-described the reasons Dr. Pletcher gave: not just muscle weakness but tremors, recurrent unexpected diarrhea and vomiting, and fatigue. On this discussion, the court cannot be certain that the ALJ was fully aware of, accurately understood, or fully considered Dr. Pletcher's medical opinion. In addition, the only articulated ground for rejecting Dr. Pletcher's opinion was that Dr. Winikates' opinion was "not inconsistent" with the ALJ's RFC finding and "the evidence in its entirely [*sic*] does not indicate the claimant is precluded from work" at the ALJ's assessed RFC. The Court cannot trace the path of the ALJ's reasoning in this explanation and no logical bridge between evidence and conclusion has been constructed. What aspects of Dr. Winikates' opinion conflict with Dr. Pletcher's? What evidence, in its entirety, contradicts with Dr. Pletcher's opinion? For aught that appears, the ALJ determined an RFC level and looked for any conflict in the record, instead of starting with an analysis and evaluation of the evidence to determine an RFC level.

In regard to the credibility of Ms. Melton's reports of subjective symptoms, the ALJ merely described parts of the evidence, without evaluative comment or analysis, and then recorded only his bare conclusion:

8

> In summary, I do not find the claimant's allegations of pain, other symptoms, and functional limitations entirely credible. Although, I accept her allegations that her symptoms limited her functional capacity, she is not credible to the extent that she contends her capacity was so limited that she was unable to engage in substantial gainful activity consistent with the residual functional capacity assessed.

(R. 17). While the ALJ cited the regulations and labeled the factors that must be applied when evaluating a claimant's subjective symptoms, and proceeded to describe some of the evidence in the record, his decision is devoid of any analysis, evaluation of the evidence, resolution of conflicts in the evidence, or application of the standards and factors to the evidence. Again, we are unable to trace his reasoning, because it is entirely absent, and he has not even begun to lay a foundation for a bridge between the evidence and his conclusions. We will neither guess as to the ALJ's reasons nor attempt to construct a valid rationale ourselves.

In their brief, the Commissioner's attorneys attempt to supply the rationales, analyses, and articulations missing from the ALJ's decision. But that is not their role and they could have saved themselves the effort because they have neither the statutory authority nor the resources to evaluate Ms. Melton's application for disability benefits. The Commissioner's representatives should heed Ms. Melton's counsel's apt rejection of their effort:

> Defendant attempts to draw Plaintiff and the Court into a debate over the medical evidence by speculating as the ALJ's reasoning. This attempt to jump over the issue of the ALJ's failure to articulate any reasoning ignores that, under the cases cited in Plaintiff's initial brief, Plaintiff and the Court are entitled to such an articulation, in order that we may be assured that the ALJ properly considered the evidence and in order that his reasoning may be traced and reviewed.

(Plaintiff's Reply Brief, pp. 1-2). Ms. Melton is a woman with severe impairments and significant limitations; she and the Court deserve a better effort by the Commissioner's ALJs and representatives than was made in this case.

9

There being nothing that the Court can review in this case due to the ALJ's failures to minimally articulate his reasoning, the Commissioner's decision must be reversed.  Ms. Melton's application for benefits will be remanded for reconsideration and the production of an adequately-articulated decision.  The Commissioner would do well to consider assigning the consideration on remand to a different ALJ.

DONE this 31st  day of March, 2006.

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

G. Gene Arnholt
arnholt@sbcglobal.net

Thomas E. Kieper
Assistant United States Attorney
tom.kieper@usdoj.gov